UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMELIA YOLANDA SPENCER,<br><br>   Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>   Defendant. | Case No.: 1:21-cv-00065-AWI-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 18, 19) |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Amelia Yolanda Spencer ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

///

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for supplemental security income on March 18, 2019. AR 198.[2] Plaintiff alleged that she became disabled on October 14, 2018, due to carpal tunnel in both hands, high blood pressure, constant back pain, anxiety, depression, and right leg pain. AR 198, 226. Plaintiff's applications were denied initially and on reconsideration. AR 120-24, 128-33. Plaintiff requested a hearing before an ALJ, and following the hearing, ALJ Michael S. Condon issued an order denying benefits on August 28, 2020. AR 12-26, 31-86. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

**Hearing Testimony**

ALJ Condon held a telephonic hearing on August 14, 2020. Plaintiff appeared with her attorney, Jonathan Peña. Jessica Coles, an impartial vocational expert, also appeared. AR 33.

In response to questions from the ALJ, Plaintiff testified that she lives alone with her dog. She gave up her driver's license because she stopped driving after her car was towed. She has a twelfth-grade education. She receives income in the form of general relief and food stamps. AR 37-40.

When asked about her past work, Plaintiff testified that she worked security at Club One Casino from 2005 to 2008. She lifted boxes up to 80 pounds and did control if there were fights. AR 40-42. Plaintiff also had self-employment with Home Funds Direct, as a telemarketer selling mortgages over the phone. The job involved sitting all day talking on the phone and working with a computer. AR 44-45. After working at Club One Casino, Plaintiff also started working as a daycare provider for her grandson. AR 45-46.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that the biggest problems keeping her from working fulltime are her right leg and her left wrist. AR 47. She also has high blood pressure and takes medications. Although the medications control her high blood pressure, they make her tired. She uses inhalers for her asthma or COPD, which help. She also takes medication for her anxiety. AR 47-49. She has an abnormal, larger than normal, heart, which has been monitored. She is not receiving any treatment for it. AR 50-52. She has no other heart problems other than trying to get her blood pressure under control. AR 53.

When asked about her sleep, Plaintiff testified that she sleeps in the daytime because of her pills. She sleeps at night, but always wakes up at 3:00 or 4:00 in the morning. AR 53. She does not take anything to help her sleep. Her blood pressure medication knocks her out. AR 54.

When asked about her left thumb, Plaintiff testified that she pulled it out of the socket and the bone is sticking out. She never received treatment it. Her doctor recently provided an order for her to have x-rays, which she had not done yet. AR 54-56. She was given a shot on both sides of her arm to get rid of the pain. She has pain from her hand and thumb up her arm. She cannot move her hand and cannot lift with it. She continued working after she hurt her thumb. AR 57-58. She now takes pain pills for her thumb. It does a lot for the pain, but it shuts her right down. AR 59.

When asked about her issues from a mental standpoint, Plaintiff testified that she has a lot of anxiety all the time and is depressed. She takes medication, but she does not attend counseling. AR 59-60.

Plaintiff also reported that she has glass in her right foot and will be getting x-rays done. AR 61-62. She stepped on some glass at work in 2007. Doctors took some of the pieces of glass out. When it started swelling, she went to the hospital and received a shot. She never did any follow-up and now it is a lump on the bottom of her right foot. AR 62. Because the lump is in the middle of her foot, she leans and walks to the side. She needs laser surgery because it has been there for so many years. When she goes in for x-rays, it will be for her wrist, back and leg. AR 63. She does not use a walker or cane. AR 64.

When asked about a typical day, Plaintiff testified that she takes a shower and takes her time cleaning. Her daughter vacuums for her home twice a week. Plaintiff uses paper plates, so she does

not have to do washing. She has a whisk broom that she uses for cleaning. She can lift about five pounds with her right arm, but nothing with her left arm. She sits for most of the day. She watches TV. She walks her dog about ½ a block and she can take the bus. She can stand for more than 20 minutes. She goes grocery shopping with her daughter every month. AR 64-69.

In response to questions from her attorney, Plaintiff testified that she could lift less than a gallon of milk with her right arm. She is not having any major symptoms with regard to her heart. If she tries to vacuum, she starts having palpitations. She will vacuum for a little bit but will sit down and then start back up again. AR 70-71.

Plaintiff also testified that she has good days and bad days. On a bad day, she will wake up around 3:00 or 4:00 in the morning, start walking around and will start crying out of nowhere. Her crying spells are random and may last for a few moments or for some hours. She will have three or four days where the crying lasts all day. AR 72-74.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE classified Plaintiff's past work as guard-security and telephone solicitor. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to assume an individual the same age, same education and same past work experience as Plaintiff. This individual could perform some range of light work, able to lift and carry up to 20 pounds occasionally, 10 pounds frequently, sit for up to eight hours in an eight-hour workday, stand and/or walk up to eight hours total in an eight-hour workday, with no postural limitations, but limited to no more than frequent operation of left foot and hand controls, and no more than occasional pulling with the left upper extremity. This person could understand, remember and apply information to perform simple tasks, could focus on and complete simple tasks, could make simple decisions, and could adapt to routine changes in the workplace, and have no more than occasional contact with the general public, coworkers and supervisors. The VE confirmed that past work would be ruled out, but there would be other work, such as garment sorter, mail clerk and router. AR 79-81.

For the second hypothetical, the ALJ asked the VE to assume the same individual as in the first hypothetical, but this person could do no lifting in excess of five pounds with the left upper extremity alone, could occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch and crawl,

4

no climbing of ladders, ropes or scaffolds, no exposure to hazards, including unprotected heights and dangerous moving machinery, could not operate motor vehicles, could have no exposure to temperature extremes and no more than occasional exposure to fumes, odors, dust, gases and areas of poor ventilation. In addition to the other mental limitations, this person could not perform fast-paced work or production-rate work, but a daily production quota was acceptable. The VE testified that the jobs would be limited to sedentary based on the descriptions with the left upper extremity. AR 81-82.

For the third hypothetical, Plaintiff's counsel asked the VE to take hypothetical one and add that the individual would have marked limitations in the ability to deal with the usual stress encountered in the workplace, with marked defined as off task fifteen percent of the workday. The VE testified that this individual would not be able to perform any past work. If the person was off task about 10% during the work shift, then there would be no work. AR 83.

For the fourth hypothetical, Plaintiff's counsel asked the VE to take hypothetical one and add that the individual would have to take four unscheduled breaks for 15 minutes in duration throughout the workday. The VE testified that there would not be any work for this individual. AR 83.

For the fifth hypothetical, the ALJ asked the VE to return to hypothetical one and add that this person could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, no climbing of ladders, ropes or scaffolds, no exposure to hazards, including unprotected heights and dangerous moving machinery and no operation of motorized vehicles. This person could have no exposure to temperature extremes and no more than occasional exposure to fumes, odors, dust, gasses and areas of poor ventilation. The VE testified that this would not change the answer to hypothetical number one. If it was added that the person could not perform fast-paced work or at a production-rate pace, but a daily production quota was acceptable, this would not change the VE's answer to hypothetical one. AR 84.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

///

5

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-26. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 13, 2019, the application date. AR 18. The ALJ identified the following severe impairments: chronic obstructive pulmonary disease (COPD), asthma, anxiety, depression, a major depressive disorder with anhedonia, and left hand and thumb atrophy with chronic pain. AR 18. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 18-20.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work. She could lift, carry, and push/pull 20 pounds occasionally and 10 pounds frequently, could stand/walk for eight hours in an eight-hour workday, and could sit for eight hours in an eight-hour workday. She was limited to frequent operation of left foot and hand controls and to no more than occasional pulling with the left upper extremity. She could understand, remember and apply information to perform simple tasks, was able to focus on and complete simple tasks, make simple decisions, and adapt to routine changes in the workplace. She also could have no more than occasional contact with the general public, coworkers and supervisors. AR 20-24. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but could perform other jobs in the national economy, such as garment sorter, mail clerk and router. AR 25-26. The ALJ therefore concluded that Plaintiff was not disabled. AR 26

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the

Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff argues that the ALJ erred by failing to incorporate limitations from examining physician, Jerry R. Livesay, M.D., when formulating Plaintiff's RFC. Plaintiff also argues that the ALJ failed to include work-related limitations in the RFC and failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints. (Doc. 18 at 1.)

### A. Evaluation of Dr. Livesay's Medical Opinion

#### 1. Legal Standard

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. §

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

416.920c  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(3)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 416.920c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians.  Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians.  These standards of articulation no longer apply in light of the new regulations, and the ALJ is not required to provide "specific and legitimate reasons" to discount the medical opinions. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant").  The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Id.*  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.* (internal citations omitted); see also 20 C.F.R. § 416.920c(b).

**2. Analysis**

On June 30, 2019, Dr. Livesay completed a consultative psychological examination.  AR 331-38.  He observed that Plaintiff was "able to readily enter into and maintain a goal directed rapport with the examiner" and appeared to "put forth a sincere effort on the tasks and questions presented her."  AR 331.  She was able to sustain her concentration on the tasks and she worked fairly persistently at a

relatively steady pace. AR 334. On mental status examination, Plaintiff maintained a cooperative attitude, her behavior was goal directed and she maintained a sincere effort. Her stream of mental activity flowed relatively rapidly, and her speech was delivered at a rapid rate. Her articulations were clear, and her associations were linear. AR 335. Her thought content was congruent with her mood, affect, and the nature the evaluation procedures. Her thought content evidenced themes of helplessness, despair, and a sense of being overwhelmed. Her mood was depressed, and her affect was anxious. Plaintiff presented melancholia and anhedonia. AR 335. She was oriented to time, date, month, year, city, person, place, and situation. She presented a relatively broad fund of knowledge and her estimated level of intelligence fell in the average to high average range. She was able to sustain her concentration even with two periods of tearfulness that required brief breaks. She also was not unduly distracted and was able to follow a three-step command. AR 336.

Dr. Livesay diagnosed Plaintiff with (1) major depressive disorder, moderately severe with anhedonia, anxious distress, and melancholia; and (2) insomnia disorder, severe, comorbid with major depression. AR 337. He opined that Plaintiff was capable of managing her own funds. He also opined that her ability to perform simple and repetitive tasks was unimpaired; her ability to perform detailed and complex tasks was mildly impaired; her ability to accept instructions from supervisors was unimpaired; her ability to interact with coworkers and the public was moderately impaired; her ability to perform work activities on a consistent basis without special or additional instruction was mildly impaired; her ability to maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition was moderately impaired; and her ability to deal with the usual stress encountered in the workplace was markedly impaired. AR 337-38.

The ALJ found the opinion of Dr. Livesay persuasive because he was a specialist in psychology; he had the opportunity to evaluate Plaintiff; and his opinion was consistent with Plaintiff's mental status examination findings, as well as the conservative nature of her mental health treatment since February 2019. AR 23. In evaluating the persuasiveness of Dr. Livesay's medical opinion, the ALJ properly considered Dr. Livesay's specialization, along with the examining relationship and the consistency and supportability of the opinion. *See* 20 C.F.R § 416.920c(c)(1)-(4).

Plaintiff contends that "[w]hile the ALJ found the opinion of Dr. Livesay to be persuasive (AR. 23), he failed to incorporate into the RFC Dr. Livesay's opined marked limitations in the ability to deal with the usual stress encountered in the workplace." (Doc. 18 at 8.)  Yet, an ALJ need not "explicitly transcribe [each] limitation in the RFC," provided he "account[s] for it in his 'translation.'" *Wascovich v. Saul*, No. 2;18-cv-659-EFB, 2019 WL 4572084, at *5 (E.D. Cal. Sept. 20, 2019); *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Here, the ALJ expressly accounted for Dr. Livesay's recommended marked impairment in the ability to deal with the usual stress encountered in the workplace by limiting Plaintiff not only to simple tasks, but also to making only simple decisions.  AR 23-24 ("The undersigned considered carefully the recommended marked impairment in the ability to deal with the usual stress encountered in the workplace and the undersigned finds the claimant is reasonably limited to the completion of simple tasks, making only simple decisions.")  The ALJ explained that with these limitations in place, Plaintiff would be "reasonably able to adapt to routine changes in the workplace."  AR 24.

Plaintiff argues, however, that the limitation to simple tasks and decisions "fails to reconcile Dr. Livesay's opinion that Plaintiff experiences marked deficits in dealing with the usual stress encountered in [the] workplace." (Doc. 18 at 8.)  To support her argument, Plaintiff does not cite any relevant, persuasive case authority.  Instead, Plaintiff relies on Social Security Ruling ("SSR") 85-15, which provides, in part, that "[t]he reaction to the demands of work (stress) is highly individualized," "the mentally impaired may have difficulty meeting the requirement of even so-called 'low stress' jobs," and "[b]ecause the response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job."  (Doc. 18 at 8) (quoting SSR 85-15.)

In contrast, the Commissioner cites district courts within this Circuit finding that a limitation to unskilled work adequately accounts for a claimant's low stress tolerance.  (Doc. 19 at 5-6) (citing *Messerli v. Berryhill*, No. 1:16–cv–00800–SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017 (limitation to "simple, repetitive tasks" accounted for moderate to serious limitations in claimant's ability to deal with the usual stress encountered in a competitive workplace); *Yates v. Colvin*, 1:15-

CV-0667-JLT, 2016 WL 5402707, at *8 (E.D. Cal. Sept. 27, 2016) (limitation to simple, repetitive tasks accounted for physician's opinion that claimant would have difficulty dealing with stress in competitive work); *Keller v. Colvin*, 2:13-CV-0221 CKD, 2014 WL 130493, at *3 (E.D. Cal. Jan. 13, 2014) (ALJ accounted for physician's opinion that claimant had "poor capacity to tolerate stress" with limitations to simple, repetitive tasks, i.e., unskilled work, with reduced interpersonal contact); *see also Vezina v. Barnhart*, 70 Fed.Appx. 932, 934 (9th Cir. 2003) (affirming ALJ's decision where in response to hypothetical question restricting claimant to low-stress work, vocational expert identified jobs involving simple, repetitive, relatively unskilled tasks).)

Case law in this circuit "tends to favor the view that a restriction to simple/routine tasks is not a catchall and does not account for all moderate limitations." *Xiong v. Kijakazi*, No. 1:21-cv-00134-GSA, 2022 WL 2119029, at *14 (E.D. Cal. Jun. 13, 2022) (collecting cases and noting that the cited cases tend to refute the notion that a limitation to simple, routine tasks is all encompassing). However, as the Commissioner suggests, "there is some case law supporting the notion that a limitation to simple routine tasks at least encompasses low stress tolerance." *Id.* (citing *Henry v. Colvin*, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (simple tasks encompasses low stress tolerance); *Keller*, 2014 WL 130493, at *3 (simple, repetitive tasks "appropriately captured" physician's opinion that claimant required "low stress settings")); *see also Calisti v. Colvin*, 2015 WL 7428724, at * 7 (E.D. Cal. Nov. 23, 2015) (holding RFC including limitations for simple, repetitive work adequately captured moderate limitations in maintaining attendance, completing a normal workday without interruptions from psychiatric condition and dealing with stress); *Coats v. Colvin*, No. 1:14-cv-00712 - JLT, 2015 WL 5813333, at *22 (E.D. Cal. Sept. 30, 2015) ("Courts within the Ninth Circuit have also concluded that a claimant's low tolerance of stress is encompassed in a limitation "to simple, repetitive tasks" and work "that does not require meeting fast-paced quotas."). Further, courts within this district have found that a serious or marked impairment in the ability to deal with the usual stress encountered in a competitive workplace is adequately addressed by a limitation to "simple repetitive tasks." *See Messerli*, 2017 WL 3782986, at *11 (finding limitation to "simple repetitive tasks" accounted for moderate to serious limitations in claimant's ability to deal with the usual stress encountered in a competitive workplace); *Keller*, 2014 WL 130493, at *3 (ALJ accounted

for physician's opinion that claimant had "poor capacity to tolerate stress" with limitations to simple, repetitive tasks, i.e., unskilled work, with reduced interpersonal contact). The ALJ here not only included a limitation to simple tasks, but also included a limitation to simple decision-making and no more than occasional contact with the general public, coworkers and supervisors. AR 23-24.

The Court further finds that the ALJ appropriately accounted for Dr. Livesay's marked impairment in the ability to deal with the usual stress encountered in the workplace by finding she was reasonably able to adapt to routine changes in the workplace with limitations to the completion of simple tasks and making only simple decisions. AR 23-24. *See McClung v. Astrue*, 2:11-CV-2874 CKD, 2013 WL 78882, at *8 (E.D. Cal. Jan. 4, 2013) (ALJ accounted for moderate to marked limitation in adapting to common work stress by finding claimant could adapt to changes in a routine work setting).

Moreover, the ALJ's finding that Plaintiff's stress limitations could be appropriately accommodated by simple work and simple decisions was also supported by the assessments of the state agency psychiatrists, which the ALJ found persuasive and who opined that Plaintiff only had moderate limitations in the ability to respond appropriately to changes in the work setting. AR 22, 100 ("able to adapt to minimal changes and stresses in the prospective work setting consistently over time"), 116 (same).

**B. Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred by rejecting her symptom complaints "without any specific rationale, let alone a clear and convincing reason." (Doc. 18 at 10.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 21. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ determined that Plaintiff's statements and allegations were inconsistent with the medical evidence of record and the record as a whole. AR 21. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). For instance, with regard to Plaintiff's complaints of back pain, the ALJ noted those symptoms were not consistent with the objective findings in June 2019, which revealed only mild tenderness in her back, negative straight leg raising, no muscle spasms, flexion, extension, lateral flexion and rotation of her back were within normal limits as were her movements of the upper and lower extremities. AR 21-22, 327-28. Similarly, with regard to her thumb, medical examination revealed only tenderness to palpation with flexion and extension and atrophy in the "snuff box" region of the left hand. AR 22, 328. With regard to Plaintiff's foot, the ALJ noted that the record evidence reflected independent ambulation. AR 20, 24. Indeed, Plaintiff herself testified that she was able to walk and did not use a cane or walker. AR 63-64.

Additionally, the ALJ considered the limited course of treatment since February 2019. AR 300, 311, 312, 344. An ALJ may discount a plaintiff's subjective complaints based on an unexplained, or inadequately explained, failure to seek treatment. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Further, the ALJ noted that Plaintiff injured her thumb while working and she kept working. AR 21, 58.

Plaintiff argues primarily that the ALJ failed to set forth specific, clear and convincing reasons for discounting her subjective complaints regarding her anxiety and depression. (Doc. 18 at 11.) However, it is evident from the record that the ALJ discounted Plaintiff's subjective complaints regarding her limited and conservative mental health treatment, noting her use of psychotropic medications and counseling only in the past. AR 21, 23. Plaintiff does not disagree with the ALJ's

13

findings concerning her limited and conservative mental health treatment. Where, as here, there is no medical evidence that Plaintiff's failure to seek treatment "was attributable to her mental impairment rather than her own personal preference," an ALJ may properly consider the claimant's failure to seek mental health treatment. *See*, *e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Rivota v. Saul*, No. 1:18-cv-01342-BAM, 2020 WL 1306985, at *6 (E.D. Cal. Mar. 19, 2020) (finding no error in ALJ's consideration that plaintiff sought little mental health treatment and did not participate in counseling). Further, an ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment).

For these reasons, the Court finds that the ALJ did not commit reversible error in evaluating Plaintiff's subjective complaints.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Amelia Yolanda Spencer.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 27, 2022**                    /s/ *Barbara A. McAuliffe*
                                                     UNITED STATES MAGISTRATE JUDGE